# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | |
| MONITA E. COFFEY, | } | CASE NO. 15-82883-CRJ-13 |
| | } | |
| | } | CHAPTER 13 |
| Debtor(s). | } | |

**MEMORANDUM OPINION ON AMENDED MOTION TO REOPEN CASE**

Before the Court is the Debtor's Amended Motion to Reopen Case (the "Amended Motion") and Objection to Motion to Reopen Case filed by PRA Receivables Management, LLC ("PRA Receivables"). Monita Coffey (the "Debtor") asserts that PRA Receivables violated the discharge injunction by repossessing a vehicle that she paid for through her Chapter 13 Plan. She seeks to reopen her Chapter 13 case to determine the nature and extent of her interest in the vehicle and to file an action against PRA Receivables for the violation of 11 U.S.C. § 524(a) of the Bankruptcy Code.

It is undisputed that: the Debtor paid the secured lender the value of the vehicle through her Chapter 13 Plan, plus interest at the plan rate of 5.25%; post-discharge the non-filing codebtor remained liable for unpaid contract interest; and PRA Receivables repossessed the vehicle after the codebtor failed to pay the balance owed. For the reasons stated below, the Court denies the Amended Motion because the Court finds that PRA Receivables' lien survived post-discharge as to the non-filing codebtor pursuant to 11 U.S.C. § 524(e) of the Bankruptcy Code which states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."[1] Accordingly, cause does not exists under 11 U.S.C. § 350(b)

---

1   11 U.S.C. § 524(e).

of the Bankruptcy Code to reopen this case as there is no relief which is available to the Debtor.

I.         BACKGROUND AND FINDINGS OF FACT[2]

On January 15, 2015, the Debtor and her husband, Kenley Coffey (hereinafter the "Codebtor") both executed a Retail Installment Sale Contract (the "Contract") with Lynn Layton Chevrolet to purchase a 2014 Chevrolet Impala (the "Vehicle").[3] Under the terms of the Contract, the Debtor and Codebtor financed $26,119.39 and agreed to pay interest at an annual percentage rate of 16.45%. Lynn Layton Chevrolet subsequently assigned the Contract to Ally Financial which then perfected its lien against the Vehicle by having its status as 1st lienholder noted on the Certificate of Title issued by the State of Alabama.[4] The Certificate of Title lists the owners of the Vehicle as "Coffey Monita or Coffey Kenley."[5]

On October 23, 2015, the Debtor filed a voluntary petition (the "Petition") in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division commencing her Chapter 13 bankruptcy case. On Schedule B, the Debtor listed the Vehicle with a value of $24,000. The Debtor listed Ally Financial on Schedule D – Creditors Holding Secured Claims, as a secured creditor with a claim for $24,000 secured by a lien on the Vehicle. Concurrently with her Petition, the Debtor filed a Chapter 13 Plan pursuant to which she proposed to pay Ally Financial an allowed secured claim in the amount of $24,000 with 5.25% interest and fixed payments of $537 per month.[6]

On November 5, 2015, Ally Financial filed a Proof of Claim in the amount of $24,934.91,

---

[2] To the extent any of the Court's findings of fact are considered conclusions of law they are adopted as such and to the extent any of the Court's conclusions of law are considered findings of fact they are likewise adopted as such.
[3] Ally Financial Proof of Claim, Exhibit Contract.
[4] Ally Financial Proof of Claim, Exhibit Certificate of Title.
[5] *Id.*
[6] Chapter 13 Plan, ECF No. 2.

2

attaching copies of the Contract and the Certificate of Title. The Debtor filed an Objection to Proof of Claim, seeking to pay interest on the secured claim at the plan rate of 5.25%, not the contract rate of 16.45%, which the Court sustained on December 21, 2015.[7]

On November 17, 2015, Ally Financial filed an Objection to Confirmation, objecting to the proposed bifurcation of its 910-claim.[8] On January 22, 2016, the Debtor filed an Amended Chapter 13 Plan pursuant to which she proposed to pay Ally Financial's 910-claim as fully secured in the amount of $24,934.91 with interest at the plan rate of 5.25%.[9] On January 26, 2016, the Court confirmed the Amended Chapter 13 Plan.[10]

On July 17, 2017, PRA Receivables filed a Transfer of Claim Other Than for Security, providing notice that Ally Financial's claim had been assigned to PRA Receivables.[11]

On November 5, 2020, the Chapter 13 Trustee filed a Certificate of Completed Chapter 13 Plan.[12] Thereafter, on November 20, 2020, the Court entered the Debtor's Order of Discharge which states, in part, as follows:

> Explanation of Bankruptcy Discharge in a Chapter 13 Case
>
> * * * *
>
> **Creditors cannot collect discharged debts**
> This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

---

[7] Objection to Proof of Claim, ECF No. 14, and Order on Objection to Claim, ECF No. 21.
[8] *See Nuvell Fin. Servs. Corp. v. Dean (In re Dean)*, 537 F.3d 1315, 1320 (11th Cir. 2008)(explaining that secured creditors holding 910-claims must receive interest calculated to ensure they receive the present value of their claims).
[9] Amended Chapter 13 Plan, ECF No. 31.
[10] Confirmation Order, ECF No. 33.
[11] Transfer of Claim Agreement, ECF No. 44.
[12] Trustee's Certification of Plan Completion, ECF No. 47

> ***However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.*** [emphasis added]
>
> * * * *
>
> ***In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt***, such as an insurance company ***or a person who cosigned*** or guaranteed ***a loan***. [emphasis added][13]

Subsequently, the Chapter 13 Trustee filed a Final Report and Account, reporting distributions to PRA Receivables in the principal amount of $24,934.91, plus interest in the amount $3,467.55.[14] On February 17, 2021, the Court entered a docket entry Order Discharging Standing Trustee, Releasing Bond Liability and Closing Case.[15]

After the Court entered the Order of Discharge, PRA Receivables made demand upon the Codebtor for payment in the amount of $12,656.86, the remaining balance owed under the Contract.[16] On October 25, 2021, PRA Receivables repossessed the vehicle after the Codebtor failed to respond to the demand for payment.

On November 2, 2021, the Debtor filed a Motion to Reopen Case, arguing that PRA Receivables violated the discharge injunction by repossessing the vehicle.[17] PRA Receivables filed an Objection to Motion to Reopen and a separate Motion for Rule 9011 Sanctions, arguing that it is well settled under the law that a creditor's lien survives a Chapter 13 discharge as to the

---

13     Order of Discharge, ECF 48.
14     Chapter 13 Trustee's Standing Final Report and Account, ECF No. 50.
15     Order Discharging Standing Trustee, Releasing Bond Liability and Closing Case, ECF No. 51.
16     Objection to Motion to Reopen, ECF No. 55, Exhibit C.
17     Motion to Reopen Case, ECF No. 52.

non-filing codebtor when a confirmed Chapter 13 Plan fails to pay the full contract rate of interest owed on the vehicle.[18]

On November 10, 2021, the Debtor filed an Amended Motion to Reopen, arguing that PRA Receivables' lien was extinguished as to both the Debtor and the Codebtor because she paid the "full value" of the vehicle through her Chapter 13 Plan.[19] Following a hearing held on November 15, 2021, the Court entered an Order Denying Motion for Sanctions and a separate Order Requiring Briefs on Amended Motion to Reopen Case, requiring the parties to address the issue regarding the effect of the Chapter 13 discharge on PRA Receivables' lien on the non-filing Codebtor's undivided interest in the Vehicle. On December 14, 2021, the parties timely filed their respective Briefs which the Court has now carefully considered.

## II. CONCLUSIONS OF LAW

The question presented in this case is whether PRA Receivables' lien survived the Debtor's Chapter 13 discharge as to the non-filing Codebtor's separate interest in the Vehicle after the Debtor made all required payments under the terms of her confirmed plan, including the payment of PRA Receivables' allowed secured claim with interest at the plan rate of 5.25%.

### A. 11 U.S.C. § 1301 Stay of Action Against Codebtor

"When a debtor files a voluntary petition for Chapter 13 relief, § 1301(a) imposes an automatic stay that prevents a creditor from pursuing an action to collect that debt from a co-debtor."[20] Section § 1301(a) states as follows:

(a) Except as provided in subsection (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to

---

18    Objection to Motion to Reopen Case, ECF No. 55, and Motion for Rule 9011 Sanctions, ECF No. 56.
19    Amended Motion to Reopen Case, ECF No. 58.
20    *Powers v. Chadwell Homes of Alabama LLC (In re Powers)*, 860 Fed. Appx. 159 (11th Cir. 2021).

5

collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless –

(1) such individual because liable on or secured such debt in the ordinary course of such individual's business; or

(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.[21]

Upon request after notice and hearing, the Court shall grant relief from the co-debtor stay pursuant to § 1301(c), to the extent: (1) the codebtor received the consideration for the claim; (2) the plan filed by the debtor does not propose to pay the claim; or (3) the creditor's interest would be "irreparably harmed" by the continuation of the stay.[22] Unless the Court grants relief from the stay pursuant to § 1301(c), the co-debtor stay remains in effect until the Chapter 13 case is closed, dismissed or converted.[23]

In the case of *In re Hart*,[24] the bankruptcy court lifted the codebtor stay over the objection of the codebtor where the Chapter 13 Plan provided for payment of the secured claim in full with 5% interest rather than the contract rate of 24%. The bankruptcy court explained that "[t]he reference in § 1301(c)(2) is to the 'claim' generally, not to the 'allowed claim.'"[25] While an "allowed claim" under § 502(b)(2) may exclude unmatured interest, under § 101(5)(A) a "claim" includes any right to payment, including unmatured interest at the contract rate.[26] "Because 1301(c) refers to 'claim' rather than an 'allowed claim,'" the bankruptcy court explained that the codebtor stay should be lifted under § 1301(c)(2) to allow a creditor to collect any contract interest

---

21   11 U.S.C. § 1301(a)(1)-(2).
22   *See* 11 U.S.C. § 1301(c)(1)-(3).
23   11 U.S.C. § 1301(a)(2).
24   *In re Hart,* 2013 WL 6175655 (Bankr. M.D. Ga. 2013).
25   *Id.* at *1.
26   *Id.*

6

not provided for in the plan.[27] Accordingly, the bankruptcy court lifted the stay and noted that not only did the codebtor remain liable for the unpaid contractual amounts owed, the vehicle "also remained liable for the unpaid interest to the extent of the codebtor's ownership interest" therein.[28]

In this case before the Court, when the Debtor filed the instant case, the codebtor stay went into effect with respect to Kenley Coffey's obligation as a co-obligor on the debt owed to Ally Financial, as well as his interest in the Vehicle. While § 1301 of the Bankruptcy Code is referred to as the codebtor stay, the legislative history of the statute makes it clear that the codebtor stay is "designed to protect a debtor operating under a chapter 13 individual repayment plan case by insulating him from indirect pressures from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor."[29] Although Congress undoubtedly intended to insulate Chapter 13 debtors from outside pressures to pay cosigned debts, the legislative history of § 1301 makes it clear that Congress also intended "to ensure that the creditor involved does not lose the benefit of the bargain he made for a cosigner."[30] The legislative history states as follows:

> [The creditor] is entitled to full compensation, including any interest, fees, and costs provided for by the agreement under which the debtor obtained his loan. The creditor is simply required to share with other creditors to the extent that the debtor will repay him under the chapter 13 plan. The creditor is delayed, but his substantive rights are not affected.[31]

In the case before this Court, neither Ally Financial nor PRA Receivables sought relief from the codebtor stay. Accordingly, the codebtor stay remained in effect until the Court closed the case on February 17, 2021. While the Debtor's personal liability has been discharged, the

---

27 *Id.*
28 *Id.* at 2.
29 *See In re Portuesi*, 2021 WL 2189014 *4 (Bankr. M.D. N.C. 2021)(quoting House Report No. 95-595).
30 House Report No. 95-595.
31 House Report No. 95-595.

Court finds that PRA Receivables' substantive rights as to the Codebtor were not affected by the Debtor's discharge.

### B.  11 U.S.C. § 524 Effect of Discharge

With certain exceptions which are inapplicable in this case, 11 U.S.C. § 1328(a) of the Bankruptcy Code provides that "as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title . . ."[32]  The effect of a Chapter 13 discharge as to property of a debtor in non-community property state such as Alabama is governed by 11 U.S.C. § 524(a)(2) which states that a discharge under the Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]"[33]

In this case before the Court, the Debtor argues that PRA Receivables is holding her Vehicle "hostage" in violation of the discharge injunction because PRA Receivables' lien was satisfied as to both the Debtor and Codebtor by virtue of her Chapter 13 discharge.[34]  The Eleventh Circuit has explained that Congress clearly "intended to insure that once a debt is discharged, *the debtor will not be pressured in any way to repay it.* In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that."[35]  "Legislative history demonstrates clearly that the purpose of the statute is to 'eliminate any doubt concerning the effect of the discharge as a total

---

32  11 U.S.C. § 1328(a).
33  11 U.S.C. § 524(a)(2).
34  Debtor's Brief in Support of Motion to Reopen, p. 7.
35  *Green Point Credit, LLC v. McLean (In re McLean),* 794 F.3d 1313, 1321 (11th Cir. 2015).

8

prohibition on debt collection efforts.'"[36] In the Eleventh Circuit, the "test for whether a creditor has violated the discharge injunction is whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt . . . ."[37]

While the discharge injunction is an "expansive provision that is sensitive to the diversity of ways a creditor might seek to collect a discharged debt,"[38] the Court of Appeals has further stated that "the purpose of section 524 . . . is to protect the debtor and not to shield third parties . . . . who may be liable on behalf of the debtor."[39] Indeed, the plain language of § 524(e) provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the *property of any other entity for*, such debt."[40] [emphasis added] Thus, while the Debtor argues that PRA Receivables' post-discharge repossession is inconsistent with the Bankruptcy Code's provisions for disposition of liens through her Chapter 13 Plan and the discharge injunction, courts have held that the discharge injunction does not prevent a creditor from taking action against a non-filing codebtor to collect a debt once the Chapter 13 case is closed or dismissed pursuant to the plain language of § 524(e).

For example, in the case of *In re Leonard*,[41] upon completion of their plan, the Chapter 13 debtors sought an order requiring a secured creditor to release its lien and turn over the title to a vehicle paid for through their plan. The debtors' Chapter 13 Plan provided for the cram down of the secured claim, leaving a post-discharge deficiency balance owed by the non-filing codebtor.

---

36     *Id.* at 1321 (11th Cir. 2015)(quoting H.R. Rep. No. 95-595, at 365-66 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6321).
37     *Id.* at 1322.
38     *Id.* at 1321.
39     *See Owaski v. Jet Florida Systems, Inc. (In re Jet Florida Systems, Inc.),* 883 F.2d 970, 973 (11th Cir. 1989)(stating that " a discharge will not act to enjoin a creditor from taking action against another who also might be liable to the creditor").
40     11 U.S.C. § 524(e).
41     *In re Leonard*, 307 B.R. 611 (Bankr. E.D. Tenn. 2004).

9

The bankruptcy court held that the secured creditor was not required to release its lien and turn over the vehicle's title. The bankruptcy court stated that "there is no injunction preventing a creditor from proceeding with collection actions against a non-filing co-debtor once a Chapter 13 case has ended."[42] The secured creditor retained its lien on the vehicle as to the non-filing codebtor because the debt was not paid in full through the Chapter 13 Plan. While the debtors received a discharge and were no longer personally liable for the deficiency balance, the non-filing codebtor remained liable for the contractual balance owed. Accordingly, the bankruptcy court concluded that the secured creditor was not required to release its lien until the debt was paid in full and was entitled to proceed against the codebtor personally as well as the vehicle in which the codebtor granted the secured creditor a security interest.[43]

While the Debtor in this case acknowledges that, taken alone, the plain language of § 524(e) seems to imply that PRA Receivables' lien survived as to the Codebtor, she argues that Chapter 13 Plans routinely extinguish liens against personal property by the operation of plan provisions.[44] However, the Debtor's Amended Chapter 13 Plan as confirmed plainly states: "The holder of each SECURED claim shall retain the lien securing such claim until a discharge is granted and such claim shall be paid in full with interest in deferred cash payments . . ."[45]

In a similar case, *In re Jackson*,[46] the issue before the bankruptcy court was whether a debtor's Chapter 13 Plan could be confirmed over the objection of a secured creditor where the Chapter 13 Plan specifically required lienholders to release their liens within fifteen days following

---

42  *Id.* at 613.
43  *Id.* at 614.
44  *Id.,* ¶ 4.
45  Amended Chapter 13 Plan, ECF No. 31.
46  *In re Jackson*, 2012 WL 6623497 (Bankr. M.D. Ga. 2012).

10

Case 15-82883-CRJ13    Doc 72    Filed 01/25/22    Entered 01/25/22 11:05:51    Desc Main
Document    Page 10 of 14

notification that the debtor had received his discharge. Similar to the case before this Court, the secured creditor held a 910-claim on which the debtor proposed to pay interest at the reduced plan rate. The secured creditor obtained relief from the codebtor stay but also objected to confirmation, arguing in part, that it should not be required to release its lien upon discharge unless the debtor modified the plan to pay its claim at the contract rate. The bankruptcy court overruled the objection, finding that the plan was confirmable under 11 U.S.C. § 1325(a)(5)(B)(i)(I), pursuant to which a "creditor is entitled to retain its lien until the earlier of full payment of its debt as calculated under nonbankruptcy law or discharge of the debtor."[47] Because the plan provided that the secured creditor would retain its lien until discharge, the plan satisfied § 1325(a)(5)(B)(i)(I).

While the plan was confirmable as proposed, the bankruptcy court further held that the lien release provision only applied to the lien against the debtor's interest in the subject property.[48] The bankruptcy court explained that requiring the secured creditor to fully release its lien upon discharge would allow the non-filing codebtor to receive the benefit of the lien release without having complied with § 1325(a)(5) to obtain such release. The bankruptcy court stated that such a result would be inequitable and inconsistent with the Bankruptcy Code.[49] Instead, the bankruptcy court determined that the lien release was only effective and enforceable as to the debtor's interest in the vehicle. The secured creditor retained it lien against the non-filing co-debtor's interest in the vehicle until the secured creditor was paid in full.

---

47    *Id.* at *2.
48    *Id.* at *1.
49    *Id.* at *2.

11

In this case before the Court, the Court likewise finds that the lien release provision in the Debtor's Amended Chapter 13 Plan released PRA Receivables' lien upon discharge only as to the Debtor pursuant to 11 U.S.C. 1325(a)(5)(B)(i)(I).[50] Although the Debtor now claims that PRA Receivables is holding her car "hostage," the Order of Discharge entered in this case clearly provided that secured creditors "may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated . . . . and may have the right to . . . . repossess an automobile."[51]

Finally, the Debtor cites the case of *In re Flournoy*[52] in support of her position that she satisfied the lien against her Vehicle by paying its "full value" through her Chapter 13 Plan. The debtor in *Flournoy* purchased a vehicle with a third party and gave the secured creditor a lien on the vehicle. The debtor then filed a voluntary petition under Chapter 13 and sought to modify the secured creditor's rights so that the lien against the vehicle would terminate when she received her discharge. The secured creditor objected to confirmation, arguing that the lien against the vehicle also secured the codebtor's obligation to pay. The bankruptcy court overruled the objection, but explained that the Bankruptcy Code does not authorize the debtor "to eliminate the lien on [the codebtor's] interest in the car."[53] The bankruptcy court stated as follows:

> Credit Acceptance improperly conflates the effect of the bankruptcy discharge and the claim-modifying effect of a chapter 13 plan. A bankruptcy discharge generally bars collection of pre-petition debt from the debtor personally. 11 U.S.C. § 524(a). Section 524, which governs the effect of discharge, provides that a discharge voids any judicial "determination of the personal liability of the debtor" and "operates as an injunction against the commencement or continuation of an action ... or an act,

---

50     *See also Faulkner v. CEFCU (In re Faulkner),* 2013 WL 2154790 *5 (Bankr. C.D. Ill. 2013)(stating that "the lien release provision in the Debtor's plan, no matter how clear and conspicuous, can only serve to release [a secured lien] as to the Debtor's interest in the vehicle").
51     Order of Discharge, ECF No. 48.
52     *In re Flournoy,* 570 B.R. 293 (Bankr. E.D. Wisc. 2017).
53     *Id.* at 294.

12

to collect, recover or offset ... [discharged] debt as a personal liability of the debtor". 11 U.S.C. § 524(a)(1), (2).

The discharge thus does not affect creditors' lien rights in property, even in the debtor's property. Enforcing a lien—a "charge against or interest in property to secure payment of a debt" (11 U.S.C. § 101(37))—is not an act to collect or recover the debt "*as a personal liability of the debtor*". 11 U.S.C. § 524(a)(2) (emphasis added). If the Code were not clear enough, the Supreme Court has repeatedly ruled that a "bankruptcy discharge ... leav[es] intact ... an action against the debtor *in rem.*" *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); see also *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). By limiting the discharge's effect to enforcement of personal liability, § 524 maintains the long-standing principle that liens pass through bankruptcy unaffected. See *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886). As § 524(e) makes clear, this principle applies equally to liens on property owned by others.[54]

Accordingly, the bankruptcy court overruled the secured creditor's objection, stating that it would confirm the case, unless otherwise amended, with the understanding that the plan modified the secured creditor's lien on the debtor's interest in the vehicle, leaving intact the secured creditor's lien on the codebtor's interest on the vehicle.[55] *Flournoy* does not support the Debtor's argument that she satisfied PRA Receivables' lien against the Vehicle by paying its full value through her Chapter 13 Plan. To the extent the Debtor cites additional cases which do not include the codebtor issue to support her argument that her discharge extinguished PRA Receivables' lien, the Court finds that those cases are not relevant.[56] Based on the plain language of § 524(e) and the case law as discussed herein, the Court finds that PRA Receivables' lien survived the Debtor's Chapter 13 discharge as to the non-filing Codebtor's separate interest in the

---

54     *Id.* at 295-296.
55     *Id.* at 300.
56     *See In re Smith,* 287 B.R. 882 (Bankr. W.D. Tex. 2002)(holding that secured creditors could not be compelled to release their security interest without payment of debt in full prior to completion of debtor's plan); *In re Scheierl*, 176 B.R. 498 (Bankr. D. Minn. 1995)(holding that debtors could not obtain confirmation of any plan that would allow them to demand release of a secured creditor's lien before completing plan payments); *In re Wilson*, 174 B.R. 215 (Bankr. S.D. Miss. 1994)(holding that on completion of Chapter 13 Plan and discharge, creditor's lien would be cancelled, and creditor would be required to turn over title).

Case 15-82883-CRJ13    Doc 72    Filed 01/25/22    Entered 01/25/22 11:05:51    Desc Main
Document    Page 13 of 14

Vehicle and that PRA Receivables was not prohibited from enforcing its lien and repossessing its collateral from the Codebtor by the Debtor's discharge.

### III. CONCLUSION

Pursuant to 11 U.S.C. § 350(b), "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."[57] PRA Receivables' lien survived the Debtor's discharge as to Codebtor's interest in the Vehicle pursuant to 11 U.S.C. § 524(e). While the Debtor's personal liability has been discharged, PRA Receivables may recover the balance owed under the Contract for unpaid interest from the non-filing Codebtor by enforcing its lien against the Codebtor's separate interest in the Vehicle. Accordingly, the Amended Motion must be denied under § 350(b) as there is no effective relief available to the Debtor if this case is reopened.

A separate Order will be entered in conformity with this Memorandum Opinion denying the Amended Motion to Reopen.

IT IS SO ORDERED.

Dated this the 25th day of January, 2022.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge

---

[57] 11 U.S.C. § 350(b).

Case 15-82883-CRJ13    Doc 72    Filed 01/25/22    Entered 01/25/22 11:05:51    Desc Main
Document    Page 14 of 14